13-21178

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELISSA LANGLAIS, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PENNMONT BENEFIT SERVICES, INC., et al. | : | NO. 11-5275 |
| ------------------------------ | : | |
| IN RE:   REAL VEBA TRUST | : | |
| | : | NO. 14-1484 |
| ------------------------------ | : | |
| IN RE:   SINGLE EMPLOYER WELFARE BENEFIT PLAN TRUST | : | |
| | : | NO. 14-1486 |
| ------------------------------ | : | |
| IN RE:   PENN-MONT BENEFIT SERVICES, INC. | : | |
| | : | NO. 14-1487 |

MEMORANDUM

McLaughlin, J.                                        April 3, 2014


        The petitioners in Langlais v. PennMont Benefit

Services, Inc., No. 11-5275 (E.D. Pa.), have filed for relief

from the automatic stay of proceedings against a debtor in

bankruptcy in order to seek partial release of the supersedeas

bond funds posted by the respondents.


        I.    Background

        The Langlais petitioners are the beneficiaries of

employee benefit plans administered by the Langlais respondents,

who are debtors in the related bankruptcy proceedings listed

above.  In September 2010, the respondents denied the
petitioners' claim for death benefits under an employee benefit
plan administered by the respondents.  In September 2011, the
American Arbitration Association issued an award in favor of the
petitioners and against all respondents for $3.8 million, plus
attorneys' fees.  On July 11, 2012, this Court confirmed the
arbitration award, but only against respondent PennMont Benefit
Services, Inc. ("PennMont") in its capacity as plan
administrator and only as to the corpus of the REAL VEBA Trust;
the Court also entered judgment in the petitioners' favor and
against PennMont in the amount of $3,800,000.00, plus attorneys'
fees and costs.[1]

The respondents filed a notice of appeal to the Third
Circuit,[2] as well as a motion to stay execution of the judgment
and approve a minimum supersedeas bond.  This Court ordered the
respondents to post a $3.9 million bond to preserve the amount
due to the plan beneficiaries, which was deposited into the
Court Registry for the Eastern District of Pennsylvania on
October 9, 2012.

On June 7, 2013, the Third Circuit affirmed this
Court's decision in its entirety.  Langlais v. PennMont Benefit

---

[1]   Docket #32 in No. 11-5275 (E.D. Pa.).

[2]   C.A. No. 12-3234 (3d Cir.).

Servs., Inc., 527 F. App'x 215 (3d Cir. 2013). On June 21, the

respondents petitioned for rehearing en banc. On July 11, the

petition for rehearing was denied.

On July 23, 2013, the respondents filed voluntary

Chapter 11 bankruptcy petitions in the bankruptcy court for the

Eastern District of Pennsylvania.[3]  Respondents also filed notice

of Suggestion of Bankruptcy in the Third Circuit appeal in

Langlais.  Those voluntary petitions were dismissed by the

Pennsylvania bankruptcy court on September 3, 2013, and any stay

in effect with regard to those petitions expired on that date.

In dismissing the Single Employer Welfare Benefit Plan Trust

("SEWBPT") and Regional Employers Assurance League Voluntary

Employees' Beneficiary Association Trust ("REAL VEBA") actions

for failure to comply with court requirements, the Pennsylvania

bankruptcy court also denied the respondents' request for a stay

"both because the Debtor is unlikely to prevail on appeal and

because the balance of the equities favors the plan

---

[3]  Nos. 13-16440, 13-16441, 13-16443, 13-16444, 13-16445 &
13-16446 (Bankr. E.D. Pa.).  Because the debtors in the instant
involuntary bankruptcy cases are the same debtors that were
before the Pennsylvania bankruptcy court in July 2013, the
bankruptcy court for the Middle District of Florida took
judicial notice of the records in the voluntary Pennsylvania
bankruptcy cases.  Findings of Fact & Conclusions of Law & Order
Transferring Venue of Cases, at 7 (Dec. 6, 2013), Docket #59 in
No. 13-5986 (Bankr. M.D. Fl.), Docket #55 in No. 13-5987 (Bankr.
M.D. Fl.), Docket #52 in No. 13-5988 (Bankr. M.D. Fl.)
(hereinafter, "M.D. Fl. Bankr. Transfer Op.").  This Court does
so too.

3

beneficiaries as the Debtor's delay in this case has harmed them
but benefitted the Debtor . . . ."[4]  The respondents appealed the
bankruptcy court dismissals to this district court, but later
sought voluntary dismissal of their appeals, which were
dismissed with prejudice.[5]

Meanwhile, on July 17, 2013, the respondents also
moved for a ninety-day stay of the Third Circuit's mandate in
the Langlais appeal to allow for a petition for a writ of
certiorari to the Supreme Court.  On July 29, the Third Circuit
granted that stay.  The respondents' deadline to file a petition
for a writ of certiorari to the Supreme Court expired on October
9, 2013.[6]

On October 1, 2013, just eight days before the time to
petition for certiorari expired, six involuntary bankruptcy
petitions under Chapter 11 of the Bankruptcy Code were filed

---

[4]   Docket #88 in In re SEWBPT, No. 13-16441 (Bankr. E.D.
Pa.).

[5]   In its decision transferring venue, the bankruptcy court
for the Middle District of Florida found that "the Debtors'
motions to dismiss their [Pennsylvania] appeals only after the
[United States Trustee ("UST")] and the [Independent Fiduciary
("IF")] filed their Motions to Transfer Venue . . . in which the
UST and the IF assert as grounds for dismissal the single estate
rule, illuminate the Debtors' efforts to game the bankruptcy
system . . . ."  M.D. Fl. Bankr. Transfer Op. at 10 n.26.

[6]   Pursuant to Supreme Court Rule 13, the ninety-day period
in which to petition for certiorari runs from the date of the
denial of rehearing in the appellate court.

4

against the Langlais respondents and related parties in the
bankruptcy court for the Middle District of Florida.[7]

No notice of these proceedings was filed by the
respondents in the Third Circuit appeal in Langlais, and on
October 10, 2013, the Third Circuit issued its mandate in the
form of a certified judgment, affirming this Court's July 2012
decision in favor of the Langlais petitioners.

Also on October 10, 2013, evidently believing that the
automatic bankruptcy stay of proceedings against a debtor under
11 U.S.C. § 362 did not apply to the release of the supersedeas
bond funds, on the grounds that the respondents no longer held a
property interest in the funds, the Langlais petitioners filed
their first motion for partial release of the funds.[8]

In the meantime, both the Independent Fiduciary and
the United States Trustee filed motions to transfer venue in the
Florida bankruptcy cases.  After briefing and a hearing on those
motions, the Florida bankruptcy court transferred the
involuntary bankruptcy cases to the bankruptcy court for the
Eastern District of Pennsylvania on December 6, 2013.  The

---

[7]   Penn-Mont Benefit Servs., Inc., No. 13-5986 (Bankr. M.D.
Fl.); Regional Emp'rs' Assurance League Voluntary Emps.'
Beneficiary (REAL VEBA) Trust, No. 13-5987 (Bankr. M.D. Fl.);
Single Employer Welfare Benefit Plan Trust (SEWBPT), No. 13-5988
(Bankr. M.D. Fl.); Penn Public Trust, No. 13-5989 (Bankr. M.D.
Fl.); Koresko Law Firm, PC, No. 13-5990 (Bankr. M.D. Fl.); and
Koresko & Assocs., No. 13-5991 (Bankr. M.D. Fl.).

[8]   Docket #50 in No. 11-5275 (E.D. Pa.).

Florida bankruptcy court found that none of the debtors or the
petitioning creditors ("Petitioning Creditors") had provided
"any valid or appropriate basis to support their choice of
venue" in Florida, and that the "[Koresko Law Firm] and [Koresko
& Associates] Objections, together with the Debtors' immediate
consents to the Orders for Relief in the instant [Florida]
cases, reflect that the Debtors are the primary, if not the
sole, beneficiaries of the involuntary petitions filed in [the
Florida] Court to side-step the rulings in both the Pennsylvania
District Court and the Pennsylvania Bankruptcy Court." M.D. Fl.
Bankr. Transfer Op. at 14-15. The Florida bankruptcy court also
found that the filing of Florida actions was both "tantamount to
an impermissible change of venue for the [Department of Labor]
Enforcement Action, which was properly filed in the Eastern
District of Pennsylvania," and "an impermissible end-run around
the dismissals of the Debtors' voluntary bankruptcy cases in the
Pennsylvania Bankruptcy Court." Id. at 20 & n.48. Holding that
it "cannot sanction such apparent abuse of the bankruptcy
process," the Florida bankruptcy court concluded that transfer
to the Eastern District of Pennsylvania was necessary both for
the convenience of all parties and in the interest of justice.
Id.

        The Petitioning Creditors in the bankruptcy actions
first moved for reconsideration of the transfer order in the

REAL VEBA, SEWBPT, and Penn-Mont Florida bankruptcy cases, which
was denied.  They also filed notices of appeal of the transfer
orders to the District Court for the Middle District of Florida,[9]
and moved for orders certifying direct appeals of the REAL VEBA
and SEWBPT transfer orders to the Eleventh Circuit, which were
denied by the Florida bankruptcy court on March 25, 2014.[10]

On December 18, 2013, this Court held that, because
the Florida bankruptcy cases had been filed and the automatic
stay went into effect nine days before the Third Circuit's
mandate issued, this Court could not release the supersedeas
bond funds until the stay was lifted by the bankruptcy court, or
the bankruptcy proceedings otherwise concluded.[11]

On January 30, 2014, the Langlais petitioners filed a
motion for relief from the automatic stay in the three above-

---

[9]   Docket #62 in No. 13-5987 (Bankr. M.D. Fl.), Docket #59
in No. 13-5988 (Bankr. M.D. Fl.).  As of today's date, these
appeals have not been withdrawn; however, counsel for the
Petitioning Creditors assured this Court at the March 24th
hearing in the bankruptcy actions that the Creditors did not
intend to pursue these appeals.  Transcript of Oral Argument at
22, 29 & 31 (E.D. Pa. Mar. 24, 2014).

[10]   Docket #81 in No. 13-5988 (Bankr. M.D. Fl.); Docket #82
in No. 13-5987 (Bankr. M.D. Fl.).

[11]   Docket #54 in No. 11-5275 (E.D. Pa.).

captioned bankruptcy cases, then pending before the bankruptcy

court for the Eastern District of Pennsylvania.[12]

On February 27, 2014, pursuant to 28 U.S.C. § 157(d),

this Court withdrew the reference to the bankruptcy court for

the Eastern District of Pennsylvania in the involuntary

bankruptcies, concluding that coordinating the bankruptcy cases

with the Department of Labor's enforcement action would reduce

confusion, forum shopping and conflicting obligations between

the two courts, would promote judicial efficiency over a common

set of facts and assets, and would logically expedite

administration of the Trusts' assets.[13]

The petitioners have filed a single "Expedited Renewed

Motion for Relief from the Automatic Stay and Release of Funds"

in Langlais and the three above-captioned bankruptcy actions

involving respondent PennMont and the REAL VEBA and SEWBPT

trusts, which are now pending before this Court.[14]

---

[12]   Docket #7 in In re REAL VEBA Trust, No. 13-21179 (Bankr.
E.D. Pa.), transferred to No. 14-1484 (E.D. Pa.); Docket #7 in
In re Single Employer Welfare Benefit Plan Trust, No. 13-21180
(Bankr. E.D. Pa.), transferred to No. 14-1486 (E.D. Pa.); Docket
#7 in In re Penn-Mont Benefit Servs., Inc., No. 13-21178 (Bankr.
E.D. Pa.), transferred to No. 14-1487 (E.D. Pa.).

[13]   Docket #709 in Perez v. Koresko, et al., No. 09-988
(E.D. Pa.).

[14]   Docket #56 in No. 11-5275 (E.D. Pa.); Docket #47 in No.
13-21179 (Bankr. E.D. Pa.); Docket #39 in No. 13-21180 (Bankr.
E.D. Pa.); Docket #45 in No. 13-21178 (Bankr. E.D. Pa.).

II. Analysis

A.   Relief from the Automatic Stay

With regard to the automatic stay of proceedings under the Bankruptcy Code, 11 U.S.C. § 362(d) provides: "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-- (1) for cause, including lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). "Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case." Baldino v. Wilson, 116 F.3d 87, 90 (3d Cir. 1997). In considering whether to lift the automatic stay, a court "may consider the policies reflected in the bankruptcy code, and the interests of the debtor, other creditors and any other interested parties." In re Brown, 311 B.R. 409, 413 (E.D. Pa. 2004). The determination is by its very nature an equitable one that requires this Court to engage in a fact-sensitive inquiry as to whether the balance of hardships favors the movant. In re Chandler, 441 B.R. 452, 463 (Bankr. E.D. Pa. 2010) (citing FRG, Inc. v. Manley, 919 F.2d 850, 854 (3d Cir. 1990)).

9

Certain unsecured creditors ("Objecting Creditors") in
the bankruptcy actions have raised a number of objections to the
Langlais petitioners' motions for relief.[15]  First, the Objecting
Creditors make any number of arguments based on their assumption
that the Petitioning Creditors' appeals to the District Court
for the Middle District of Florida regarding transfer of venue
in the REAL VEBA and SEWBPT actions are likely to be successful,
and that any decision by this Court regarding relief from the
automatic stay or the release of bond funds is therefore
premature.  Because the Petitioning Creditors' counsel has
assured this Court that the Florida appeals will be withdrawn,
these arguments are moot.  Venue is proper in this Court, and it
is within this Court's jurisdiction and authority to grant
relief from the automatic stay.

In this case, it is indisputable that the balance of
hardships favors the Langlais petitioners, who have been waiting
to receive death benefits since September 2010, at great

_____

[15]   Opposition by Certain Unsecured Creditors Having Claims
for Legal Services in the U.S. Tax Court to the Motion for
Relief from the Automatic Stay Filed by the Langlais Parties
(Feb. 19, 2014), Docket #26 in No. 13-21178 (Bankr. E.D. Pa.),
Docket #34 in No. 13-21179 (Bankr. E.D. Pa.), Docket #28 in No.
13-21180 (Bankr. E.D. Pa.) (hereinafter "Unsecured Creditors'
Opp'n").  See also Letter Objection to Motion for Relief from
Stay, filed by Philip & Abi Simon, Docket #40 in No. 13-21179
(Bankr. E.D. Pa. Feb. 26, 2014).  The Court also heard arguments
regarding the Langlais petitioners' motions by the Independent
Fiduciary, the Petitioning Creditors, and by Mr. Koresko, at the
March 24th hearing.  Tr. at 70-82.

personal and financial cost, as detailed in their motions. The
delay caused by the respondents' repeated bankruptcy filings in
multiple jurisdictions has served only to forestall execution of
judgment long ago entered by this Court.

The Court finds that there is good cause to lift the
automatic stay, in large part because, to the unlikely extent
that the relevant debtors might enter reorganization, the
Langlais claim is sufficiently large that it must be resolved
before the debtors could complete such a reorganization. See In
re Myers, 491 F.3d 120, 128-29 (3d Cir. 2007) (citing In re
Kissinger, 72 F.3d 107, 109 (9th Cir. 1995)).

### B.    Partial Release of Supersedeas Bond Funds

#### 1.    The Third Circuit's Mandate

The Objecting Creditors argue that, because the
automatic stay went into effect nine days before the extension
of the mandate granted by the Third Circuit had expired, the
mandate was erroneously returned and void. See In re Siciliano,
13 F.3d 748, 750 (3d Cir. 1994). Therefore, the Objecting
Creditors argue, the Langlais action remains within the Third
Circuit's jurisdiction, "subject to a possible Supreme Court
petition or other choice by the fiduciaries of REAL VEBA," and
this Court "presently has no jurisdiction to grant any relief on
account of the alleged claim of Langlais . . . especially an

11

amount the Clerk of the District Court is bound to return to the
appropriate estate and is clearly equity for the benefit of all
trust claimants." Unsecured Creditors' Opp'n ¶¶ 14-15.

The Third Circuit has indeed held that actions taken
in violation of the stay are void. In re Siciliano, 13 F.3d at
750. If this Court were limited to granting only prospective
relief from the automatic stay, the Objecting Creditors'
argument with regard to jurisdiction might be persuasive.
"However, [the Third Circuit] and others have held that actions
in violation of the stay, although void (as opposed to
voidable), may be revitalized in appropriate circumstances by
retroactive annulment of the stay." In re Myers, 491 F.3d at
127. "[T]his conclusion gives courts flexibility to resolve
conflicts involved in the resolution of significant claims and
reflects the most logical interpretation of § 362(d) of the
Bankruptcy Code," id. at 128, which allows this Court to grant
relief by "terminating, annulling, modifying, or conditioning"
the stay on a case-by-case basis.

In making the determination whether to annul the stay
and grant retroactive relief, courts have observed that the
relevant inquiry examines: "(1) whether the creditor was aware
of the filing or encouraged violation of the stay; (2) whether
the debtor engaged in inequitable, unreasonable, or dishonest
behavior; and (3) whether the creditor would be prejudiced." In

12

re Meyers, 491 F.3d at 129 (citing In re Nat'l Envtl. Waste
Corp., 129 F.3d 1052, 1055 (9th Cir. 1997)).  On the whole,
there is "wide latitude accorded to the Bankruptcy Court to
balance the equities when granting relief from the automatic
stay."  Id. at 130.[16]

        As to the behavior of the debtor-respondents in these
actions, the record recounted above — which does not even touch
on the related non-bankruptcy actions also pending before this
Court — speaks for itself.  The Florida bankruptcy court found
that the debtors "abuse[d] [] the bankruptcy process" in an
attempt to circumvent the rulings of the Pennsylvania bankruptcy
court and change the venue for the Department of Labor's
currently pending case.  Earlier, the Pennsylvania bankruptcy
court also ruled that that these debtors were unlikely to
prevail on appeal, and that their delay had harmed plan
beneficiaries.  In the Langlais action itself, despite seeking a
ninety-day stay of the Third Circuit's mandate with the
purported intent to petition the Supreme Court for a writ of
certiorari, the respondents allowed eighty-two days to elapse
without filing any such petition, before the automatic
bankruptcy stay went into effect.  The respondents also allowed

---

[16]    See also In re Snyder, 292 F. App'x 191, 193 (3d Cir.
2008) (citing In re Myers for the proposition that the
bankruptcy court has wide latitude to balance the equities in
annulling a stay); In re Coletta, 336 F. App'x 202, 205 & n.3
(3d Cir. 2009) (same).

13

the mandate to issue without informing the Third Circuit of the
filing of the Florida bankruptcy actions, and filed no
suggestion of bankruptcy in this Court until October 17, 2013,
more than two weeks after the bankruptcy actions were filed, and
a week after the Third Circuit's mandate issued.[17]

As to whether the Langlais petitioners were "aware of
the filing or encouraged violation of the stay," by filing their
first motion for partial release of funds on October 10, 2013,
the Court believes that any noncompliance was inadvertent.  The
petitioners themselves first brought the Florida bankruptcy
filings to this Court's attention in their motion, and it is
evident from their motion and from counsel's comments at the
March 25, 2014 hearing that their arguments regarding the non-
applicability of the stay, albeit incorrect, were made in good
faith.  See In re Meyers, 491 F.3d at 129-30 (holding that the
bankruptcy court had not abused its discretion in concluding
that the debtor's "manifestly dilatory tactics and the prejudice
to [the creditor] outweighed [the creditor]'s unclean hands in
pushing forward the [Common Pleas] Court orders in violation of
the stay").

Finally, the prejudice to the Langlais petitioners
under these circumstances is obvious.  They have been seeking
death benefits from the respondents for more than three years.

_____

[17]  Docket #52 in No. 11-5275 (E.D. Pa.).

14

There have been at least two judgments entered in their favor,
by the American Arbitration Association, and by this Court.  The
Third Circuit affirmed this Court's decision nearly ten months
ago, and denied the respondents' motion for rehearing.  The
progress of this litigation does not suggest that the
respondents have any material chance of achieving a different
outcome.  Further delay would only result in serious financial
damage to the petitioners.  See, e.g., In re Meyers, 491 F.3d at
129 ("[T]he only effect of refusing to ratify the state court
action would be to reward [the debtor] for her attempted abuse
of the bankruptcy system.  That, we will not do.").

        Given this Court's wide latitude to balance the
equities, the Court finds ample reason to annul the stay as to
the Langlais action.  Accordingly, the Third Circuit's October
10, 2013 mandate affirming this Court's decision is ratified,
the respondents' appellate options are exhausted, and it is
within this Court's jurisdiction to authorize execution of
judgment, including release of the supersedeas bond funds.

                2.      The Bond Funds Are Not Property of the
                        Estate

        In Mid-Jersey Nat'l Bank v. Fidelity-Mortgage
Investors, 518 F.2d 640 (3d Cir. 1975), the Third Circuit held
that a debtor's appeal was not subject to the automatic stay
provisions of the old Bankruptcy Act, 11 U.S.C. § 711 et seq.

                                15

(1898), the predecessor to the current Bankruptcy Code, because
the debtor had posted a supersedeas bond and made a deposit with
the district court to stay execution of judgment.  While the
appeal was pending, the debtor filed for bankruptcy.  The Third
Circuit held that (1) the appeal could be stayed only if the
deposit with the court constituted property of the debtor over
which the bankruptcy court had exclusive jurisdiction; and (2)
the deposit was not property of the debtor because the only
property interest the debtor had in the certificate was a
"contingent reversionary interest as a potential beneficiary of
the trust." Mid-Jersey, 518 F.2d at 644.

In Borman v. Raymark Industries, Inc., 946 F.2d 1031
(3d Cir. 1991), the Third Circuit held that Mid-Jersey was no
longer an accurate statement of the law under the expanded
jurisdiction of the 1978 Bankruptcy Code, because Section
362(a)(1) stays all pre-petition actions against the debtor, not
merely acts to obtain property of the debtor.  Borman, 946 F.2d
at 1035.  Accordingly, the Third Circuit held that Mid-Jersey
was no longer an accurate statement of the law to the extent
that it had held that a supersedeas bond or deposit could
prevent the application of the automatic stay.  Id. at 1037.
However, the Third Circuit expressed "no opinion on whether the
supersedeas bond is considered property of the estate under the
[expanded definition of the] Bankruptcy Code." Id.  Nor did the

Third Circuit "imply that it would be improper for the
bankruptcy court to lift or modify the stay to permit
disposition." Id.

          In Raymark Industries, Inc. v. Lai, 973 F.2d 1125 (3d
Cir. 1992), the Third Circuit reiterated its Borman holding
that the automatic stay applies to all actions brought against a
debtor regardless of whether the assets in question are
considered property of the debtor's estate. Id. at 1126.
Again, however, the Third Circuit did not find it necessary to
determine whether a cash supersedeas bond posted with a state
court constituted "property of the estate." Id. at 1130. See
also In re: Advanced Elecs., Inc., 283 F. App'x 959, 966 n.5 (3d
Cir. 2008) (noting that, as in Borman, the Third Circuit was not
required to reach the question whether a supersedeas bond fund
is property of the estate).

          In light of the foregoing, this Court concludes that
at least $3.8 million of the supersedeas bond funds in the
Court's registry is no longer "property of the estate" in which
the debtor-respondents have an equity interest.[18]

---

          [18] In their January 30, 2014 motion for relief from the
automatic stay, the Langlais petitioners specifically disclaimed
any intent to pursue their entitlement to attorneys' fees at
that time.  Docket #7 at ¶ 30, in No. 13-21179 (Bankr. E.D.
Pa.).  In their March 11, 2014 combined motion, the petitioners
state that they do not seek the release of the remaining
$100,000 supersedeas funds securing the award of attorneys'
fees, but they do seek leave to have that sum "determined if not

17

The Objecting Creditors have also argued that:  (1)
"the deposit placed by SEWBPT for the appeal is not the property
of Langlais, and it is not the satisfaction of a judgment out of
'assets of REAL VEBA trust' as required by [this] Court's
order;" (2) "[t]here is no security interest perfected under the
UCC," under 11 U.S.C. § 362(b)(3); (3) the amount of the bond
funds is "also arguably cash collateral that Langlais cannot use
because of a 'beneficial interest' recognized by [this] Court,"
under 11 U.S.C. § 363(e) and Bankruptcy Rule 4001(b); and (4)
"any judgment lien relating to such amount would be primed by
possible DIP financing, [11 U.S.C.] § 364, the trustee's strong-
arm power to prime judicial liens[,] or would be voidable as a
preference or fraudulent conveyance. [11 U.S.C.] §§ 547, 548."
Unsecured Creditors' Opp'n ¶ 15.  The Court is not persuaded by
these arguments.

Under Section 547 of the Bankruptcy Code, which
governs preferential transfers, the bankruptcy trustee may avoid
any transfer of an interest of the debtor in property:

(1) to or for the benefit of a creditor;

---

released."  Docket #56 at 11, in No. 11-5275 (E.D. Pa.).  In
concluding that the stay is annulled with respect to the
Langlais proceeding, the Court does not at this time make any
determination as to whether the remaining $100,000 supersedeas
bond funds might be considered property of the debtors' estate
in bankruptcy.

18

> (2) for or on account of an antecedent debt owed by
> the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made —
>     (A) on or within 90 days before the date of the
> filing of the petition; or
>     (B) between ninety days and one year before the
> date of the filing of the petition, if such creditor
> at the time of such transfer was an insider . . . .

11 U.S.C. § 547(b).

> Under Section 548 of the Bankruptcy Code, which

governs fraudulent transfers:

> (a)(1) The trustee may avoid any transfer . . . of an
> interest of the debtor in property, or any obligation
> . . . incurred by the debtor, that was made or
> incurred on or within 2 years before the date of the
> filing of the petition, if the debtor voluntarily or
> involuntarily —
> (A) made such transfer or incurred such obligation
> with actual intent to hinder, delay, or defraud any
> entity to which the debtor was or became, . . .
> indebted; or
> (B)(i) received less than a reasonably equivalent
> value in exchange for such transfer or
> obligation . . . .

11 U.S.C. § 548(a).

> In Langlais, the supersedeas bond was posted by the

debtor-respondents on October 9, 2012, more than nine months

before the voluntary petitions were filed in Pennsylvania on

July 23, 2013, and almost a year before the involuntary

petitions were filed in Florida on October 1, 2013.  Nor do the

Objecting Creditors offer any argument to support their

suggestion that the bond is a fraudulent transfer under 11

U.S.C. § 548.  As Justice Stevens noted in his dissent to

19

Celotex Corp. v. Edwards, 514 U.S. 300 (1995), "[i]t strains
credulity, to suggest that a supersedeas bond, posted almost a
year and a half before the bankruptcy petition was filed, could
be set aside as a preference or as a fraudulent transfer for the
benefit of [the debtor's] adversaries in bitterly contested
litigation." Id. at 325-36 (Stevens, J., dissenting).[19]
Finally, inasmuch as the Court has held that the Langlais bond
funds are no longer "property of the estate" in which the
respondents have any interest, the other cited sections of the
Bankruptcy Code are inapplicable.


III. Conclusion

        The balance of the equities in this case favors
granting the Langlais petitioners relief from the automatic stay
of bankruptcy by annulling the stay, ratifying the Third

---

[19]    In Celotex, the Supreme Court held that the question
whether judgment creditors were entitled to immediate execution
on a supersedeas bond was related to the debtor's bankruptcy
case, and therefore within the bankruptcy court's jurisdiction.

        Justice Stevens also noted: "The very purpose of a
supersedeas bond is to protect judgment creditors from the risk
that insolvency of the debtor may impair their ability to
enforce the judgment promptly.  When the bond has served the
purpose of forestalling immediate levies on the judgment
debtor's assets — levies that might have precipitated an earlier
bankruptcy — it is inequitable to postpone payment merely
because the risk against which the bond was intended to provide
protection has actually occurred."  514 U.S. at 332 (Stevens,
J., dissenting).

Circuit's mandate, and ordering partial release of the

supersedeas bond funds.

     An appropriate order shall issue separately.

21